**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.J., K.E., and L.G.**

**No. 22-0021** (McDowell County 21-JA-1, 21-JA-2, and 21-JA-3)

**MEMORANDUM DECISION**

Petitioner Mother A.G., by counsel Patricia Kinder Beaver, appeals the Circuit Court of McDowell County's December 15, 2021, order terminating her parental rights to B.J, K.E., and L.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), William O. Huffman, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and L.G.'s father in January of 2021. The DHHR alleged that it received a referral indicating that the parents abused and sold drugs and that their home was in deplorable condition. Following the referral, a Child Protective Services ("CPS") worker visited the home and found it to be in a deplorable and unsafe condition. The worker presented at the home and took pictures of the poor conditions and later spoke to one of the children, who reported that petitioner uses a needle, and that petitioner helps the father smoke green leaves. The worker returned to the home four days later and very little progress had been made towards achieving safe home conditions. Accordingly, the DHHR alleged that the children would be in imminent danger if allowed to remain in the custody of the parents.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The court held a contested adjudicatory hearing in April of 2021. The CPS worker testified that the DHHR received a referral that petitioner and the father abused drugs and that their home was in deplorable condition. The worker testified that the yard contained several holes at least two feet deep, lumber with nails protruding out, and two saw blades next to the children's toys. Further, the home was filled with trash and debris such that there was "hardly any walkway," including trash on the children's beds and trash lying next to portable space heaters. A container with a crystalized white substance and two torch lighters was discovered by the worker on the parents' bathroom sink. During her testimony, the worker introduced photographs she had taken of the home and noted that the children were not present in the home during her initial visit because they were visiting other family members. In fact, L.G. was at a relative's home next door, K.E. was at a different relative's home just down the street, and B.J. was visiting his father.[2]

Following testimony, petitioner's counsel argued that the DHHR failed to establish that the children lived in the home and were subject to any alleged poor conditions. At the conclusion of the hearing, the court found that the evidence supported the conclusion that the children lived in the home. Specifically, the court noted that the photographs of the home established that saw blades were found next to a child's toy, a swing set was present in the yard, toys were in the home, that the children had a bedroom with bunkbeds, and that the children had a bathroom with their drawings present. As such, the court found that there was "plenty of evidence of occupancy in this house by children." The court further found that the images depicted deplorable and inadequate home conditions and that petitioner failed to provide the children with safe and secure shelter. Accordingly, the court adjudicated petitioner as an abusing parent and directed her to comply with services provided by the DHHR. In its adjudicatory order, the court noticed a multidisciplinary team ("MDT") meeting for the following month.

Petitioner failed to appear for the MDT meeting held in May of 2021. The DHHR filed the family case plan in June of 2021 and indicated that petitioner was noncompliant with drug screens and parenting services and that petitioner refused to allow CPS workers access to her home in order to assess any progress in the home. There were no objections to the family case plan. By order entered on July 2, 2021, the court scheduled the matter for disposition.

The court held a dispositional hearing in September of 2021, during which petitioner moved the court for an improvement period. The court took judicial notice of a prior criminal matter in 2020 wherein petitioner pled guilty to a drug-related offense in magistrate court. Corporal Donnie Perry of the McDowell County Sheriff's Department testified that he accompanied a CPS worker to petitioner's home approximately seven days prior to the dispositional hearing for the purpose of assessing the home's condition. Cpl. Perry testified that he spoke to petitioner's husband, who denied him access to the home, and that another adult in the home informed him that petitioner was present in the home at that time. According to Cpl. Perry, the immediate vicinity outside the home was "very unsafe" for children and was in deplorable condition, with trash and building supplies scattered throughout the yard. Cpl. Perry testified that

---

[2]At the time of the petition's filing, B.J. was approximately thirteen years old, K.E. was approximately nine years old, and L.G. was approximately six years old. Both B.J.'s father and K.E.'s father were deemed nonabusing parents.

he was familiar with the condition of the home at the initiation of the proceedings and that, in his opinion, the condition of the home had worsened.

A service provider then testified that, as of the dispositional hearing, petitioner failed to maintain contact with him or participate in any services. The provider testified that petitioner's phone number was disconnected but that he visited her home and attempted to drug screen her no less than six times during the proceedings to no avail. On several of those occasions, a vehicle was located in the driveway of the home and a television could be heard from outside the home, but no one answered the door. The provider stated that, on one attempted visit, he left a card in the door with his contact information, but that petitioner never contacted him.

A CPS worker testified that drug screening, adult life skills and parenting classes, and supervised visits were offered to petitioner but that she was entirely uncooperative with the DHHR. The worker noted that petitioner failed to undergo a single drug screen or participate in any parenting or adult life skills classes. The worker testified that she attempted to visit petitioner's home in May of 2021, but petitioner's husband asked her to leave. She also testified that she accompanied Cpl. Perry to the home seven days prior to the dispositional hearing but was denied access. The DHHR introduced pictures of the outside of petitioner's home that were taken by the CPS worker when she accompanied Cpl. Perry to the home. According to the CPS worker, the outside of the home was in the same condition as when the case was initiated and there had been no meaningful improvement.

Petitioner testified that she recently obtained new housing and moved into the home her mother had vacated, which was in good condition. Petitioner claimed that the CPS worker had contacted her on only one occasion. Petitioner denied that she had a drug problem and stated that she "used to" have a problem with pain medication but that she overcame her addiction by seeking treatment at a Suboxone clinic in Virginia; however, petitioner was unable to recall her doctor's name at the clinic. Petitioner also denied that she was home on the six instances the service provider came to her home to drug screen her and claimed she was "taking a nap" when Cpl. Perry and the CPS worker visited her home.

By order entered on December 15, 2021, the court denied petitioner's motion for an improvement period and terminated her parental rights. The court found that it was undisputed that petitioner failed to participate in any drug screens, parenting classes, or adult life skills classes notwithstanding the many attempts made by the service provider. The court found that petitioner was entirely noncompliant with services and had not cooperated with the DHHR in any meaningful way. The court noted that Cpl. Perry and the CPS worker provided credible testimony that no improvements to the outside of the home had been made and that they were denied access to the home by petitioner's husband. The court further found that petitioner's testimony that she did not have a drug problem was not credible given that she entered a guilty plea in 2020 to knowingly and intentionally possessing a controlled substance without a valid prescription. Based upon the foregoing, the court concluded that there was no reasonable likelihood that petitioner could correct

the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the court's December 15, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises two assignments of error regarding the termination of her parental rights. First, petitioner claims that the circuit court erred in terminating her parental rights rather than employing a less restrictive alternative disposition. Petitioner claims that the children were not living in the home at the time of the petition's filing and, thus, were not in danger of anything taking place at the home. As such, she asserts her parental rights should not have been terminated. Second, petitioner argues that the circuit court erred in terminating her parental rights when she was not involved in the formulation of the family case plan and when she did not receive notice of the MDT meeting wherein the family case plan was discussed. Petitioner claims that the family case plan that was drafted without her input did not address any alleged substance abuse issues and there was "no indication that rehabilitation services were offered to [petitioner] or outpatient services for her alleged substance abuse." Further, no party filed a motion to terminate petitioner's parental rights and the guardian failed to file a written report. Accordingly, petitioner avers that the circuit court erred in terminating her parental rights. We find petitioner's arguments to be meritless.

At the outset, we dispense with petitioner's claim that the circuit court erred in terminating her parental rights when the children did not live in the home at the time of the petition's filing. While petitioner couches her argument in terms of the termination of her parental rights, her argument actually attacks her adjudication. We have held that

---

[3]L.G.'s father's parental rights were terminated during the proceedings below. The permanency plan for L.G. is adoption by the paternal grandparents. The parental rights of the fathers of B.J. and K.E. remain intact. The permanency plan is either reunification with the fathers or adoption or permanent legal guardianship with the paternal grandparents or other relatives.

[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). The record establishes that the circuit court specifically considered this argument below and found it to be without merit. The CPS worker's testimony demonstrated that the children were only temporarily out of the home visiting relatives—most of whom resided in close proximity to petitioner. Moreover, the court considered photographs introduced into the record, which depicted evidence of children living in the home. Based on the totality of this evidence, the circuit court did not err in determining that the children were abused children and that petitioner was an abusing parent. Thus, petitioner's argument that she was entitled to a less restrictive alternative disposition must necessarily fail.

Next, we find no error by the circuit court regarding petitioner's claims that she was not noticed of or included in the formulation of the family case plan. Petitioner's claim that she was not noticed to the MDT meeting wherein the family case plan was discussed is simply false. The adjudicatory order clearly sets forth the date of the MDT meeting in question, which was entered nearly a month in advance of the meeting. Moreover, petitioner failed to produce any evidence that the circuit court clerk did not send the order to petitioner or her counsel. To the extent petitioner claims that the family case plan was somehow deficient, we find no error. The record is clear that the DHHR attempted to provide services to petitioner but that she evaded the service providers' various efforts at contacting her and failed to maintain contact with the DHHR.

We likewise find that petitioner is not entitled to relief based upon the lack of a written motion to terminate her parental rights. In support of her argument, petitioner cites West Virginia Code § 49-4-114(c)(1), which provides:

Upon the filing of the verified petition seeking to have the parental rights terminated, the court shall set a hearing on the petition. A copy of the petition and notice of the date, time and place of the hearing on the petition shall be personally served on any respondent at least twenty days prior to the date set for the hearing.

Petitioner's reliance upon this code section is misplaced as it does not require the filing of a written motion to terminate a respondent parent's parental rights prior to the dispositional hearing. Rather, this code section speaks to the filing of a petition and the notice requirements for the same. Moreover, aside from simply stating that there was no motion filed and citing to the aforementioned statute, petitioner provides no argument as to how she was prejudiced by the lack of written motion or why it was error. The record demonstrates that a notice of the dispositional hearing was timely filed and, at the dispositional hearing, both the guardian and the DHHR orally moved to terminate petitioner's parental rights. Petitioner did not object, nor did she argue that she was surprised by the guardian and DHHR's position. She also did not request a continuance. Accordingly, based on these facts, we find no error.

5

While petitioner also argues that the circuit court erred in terminating her parental rights when the guardian failed to file a report, she fails to provide any argument as to how she was prejudiced or how the lack of a guardian's report constitutes reversible error. Although the docket sheet is devoid of any entry for a guardian's report, both the transcript and the order for the adjudicatory hearing reference a guardian's report. Moreover, petitioner failed to object to any alleged lack of a report at the dispositional hearing and did not alert the circuit court that she was prejudiced in any way by the guardian's alleged failure to file a report. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Therefore, we find no error in this regard.

We further find that there was sufficient evidence upon which to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Testimony introduced by the DHHR indicated that petitioner failed to participate in any services—drug screens and parenting and adult life skill classes—offered by the DHHR, despite being provided with numerous opportunities to do so. Further, while the CPS worker and Cpl. Perry were not permitted to view the inside of the home, they were able to observe the outside of the home, and Cpl. Perry indicated that the condition of the home had worsened since the initiation of the proceedings. Although petitioner claimed that the other witnesses' testimony was untruthful, the circuit court found that her testimony was not credible, and we decline to disturb this determination on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Based on the abovementioned evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare, and we agree. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence as set forth above, we find that the circuit court did not err in terminating petitioner's parental rights.

Finally, because the DHHR continues to assess the suitability of the homes of the nonabusing fathers, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 15, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn